UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPHINE GORSHKOV,

    Plaintiff,

v.                                                     Case No. 8:18-cv-945-T-CPT

ANDREW M. SAUL,
Commissioner of
Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments. For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1988, obtained a GED, and has past relevant work experience as a loan officer and telemarketer. (R. 20, 77, 79). In February 2015, the Plaintiff applied for DIB and SSI, alleging disability as of June 30, 2011, due to a brain

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit.

cyst, migraines, scoliosis, anxiety, sleep disorder, and vision fluctuations. (R. 165-75, 189). The Social Security Administration denied her applications both initially and on reconsideration. (R. 123-24).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on December 28, 2016. (R. 70-94). The Plaintiff appeared at the hearing without a representative and testified on her own behalf. A vocational expert (VE) also testified.

In a decision dated May 16, 2017, the ALJ found that the Plaintiff: (1) was insured through June 30, 2011, and had not engaged in substantial gainful activity since her alleged onset date; (2) had the severe impairments of migraine headaches, anxiety disorder, scoliosis of the spine, and a history of benign intracranial epidermoid cyst status post resection; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform sedentary work with some postural, environmental, and mental limitations; and (5) based in part on the VE's testimony, could not perform her past relevant work but was capable of performing other jobs in significant numbers in the national economy. (R. 11-22). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 22).

Following the ALJ's determination, the Plaintiff submitted additional evidence (R. 40-69) and retained a lawyer (R. 33-36). The Plaintiff's attorney thereafter requested review by the Appeals Council (R. 251-52), but that request was denied (R. 1-7). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)); 20 C.F.R. § 416.920(a)(4).[3] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given her RFC, age, education, and work experience. *Carter*, 726 F. App'x at 739 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the

---

[2] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id*. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether he applied the correct legal standards. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While the court accords deference to the Commissioner's factual findings, "no such deference is given to [his] legal

conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

III.

The Plaintiff claims on appeal that the ALJ failed to properly evaluate symptoms caused by her visual impairments. (Doc. 22 at 5-6). In particular, the Plaintiff argues the ALJ erred in dismissing her complaints of diplopia (double vision), photophobia (light sensitivity), and blurry vision, even though evidence demonstrated that such symptoms persisted and would interfere with her ability to perform the representative occupations identified by the ALJ. *Id.* As a result, the Plaintiff submits that the matter must be remanded for further consideration of her vision problems. *Id.*

The Commissioner counters that substantial evidence supports the ALJ's determination with respect to the Plaintiff's alleged visual impairments and that the ALJ properly assessed the medical opinions of record in reaching her conclusion. *Id.* at 7-10.

Upon a thorough review of the record and the parties' submissions, the Court concludes that the Commissioner's decision is adequately supported.

A.

The Court begins its analysis with the Plaintiff's claim of error as it pertains to her DIB application. To be eligible for DIB under the Act, a claimant must demonstrate disability on or before the last date for which she was insured. *Moore*, 405 F.3d at 1211; 42 U.S.C. §§ 416(i)(3), 423(a) & (c); 20 C.F.R. §§ 404.101, 404.130, 404.131. "If a claimant becomes disabled after losing insured status, h[er] DIB claim

5

will be denied despite a disability." *McClain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 937 (11th Cir. 2017) (citation omitted).

As noted above, the Plaintiff lost her insured status for purposes of DIB on June 30, 2011, and thus was required to prove she was disabled prior to that date. By the Court's review of the record, however, the Plaintiff did not report *any* visual issues to her healthcare providers until more than two months later, on September 12, 2011, when she first complained of blurred vision associated with headaches. (R. 276). There is no medical evidence in the record, nor any notation from a treatment provider, that the Plaintiff's vision problems existed before that date. Indeed, with respect to her allegations of diplopia, the record indicates that the Plaintiff's complaints of double vision did not start until October 2016—more than five years after her date last insured—following surgery to remove a benign brain tumor. (R. 352, 357, 359).

Because the record does not reveal that visual problems existed prior to the Plaintiff's date last insured, her contention that her DIB claim must be remanded for additional consideration is without merit.

B.

The Plaintiff's argument regarding her SSI claim presents a closer question. Unlike DIB, eligibility for SSI does not have a date of last insurability requirement. Rather, "[f]or SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (per curiam); *see also Moore*, 405 F.3d at 1211; 20 C.F.R. §§ 416.330, 416.335. As a result, for purposes of her SSI claim, the Plaintiff

was required to show that she was disabled on or after February 9, 2015. Based upon its review of the record, the Court finds substantial evidence supports the ALJ's evaluation of the Plaintiff's complaints of visual impairments and symptoms.

With respect to the Plaintiff's allegations of photophobia and blurry vision, her argument is largely underdeveloped and may therefore be deemed waived. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (noting that an issue was waived because the claimant did not elaborate on the claim or provide citation to authority); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."). While the Plaintiff does cite to several instances in the treatment record of her reported photophobia and blurry vision (R. 261, 263, 311, 321, 325, 347), she fails to demonstrate that such symptoms preclude her from working. Notably, the Plaintiff never mentions how often she experiences these symptoms and points to no medical opinion to support the frequency, duration, or severity of her condition. Moreover, by the Court's review, the record indicates that the Plaintiff's sporadic complaints of photophobia and blurry vision were associated with her migraine headaches—a condition the ALJ found to be severe but adequately addressed in her RFC assessment. As a result, the Plaintiff fails to present, nor does the Court find, any basis to remand this action for further consideration of these alleged vision problems.

Substantial evidence likewise supports the ALJ's evaluation of the Plaintiff's complaints of diplopia. As stated above, the symptoms stemming from this condition

developed following the Plaintiff's brain tumor removal surgery in October 2016. (R. 352-53, 357). The ALJ acknowledged as much in her decision but found that the Plaintiff's diplopia and visual field constriction were non-severe, i.e., that they did not cause more than a minimal limitation in the Plaintiff's ability to perform basic work activities. (R. 14). In making this finding, the ALJ cited the records of the Plaintiff's neurosurgeon, Dr. Zeguang Ren, who noted at a post-surgical follow-up appointment in November 2016 that the Plaintiff's diplopia improved with prism glasses and that she was able to walk with "slight disequilibrium." *Id.* (citing R. 396). The ALJ additionally pointed to the records of the Plaintiff's treating physician, Dr. Raphael Lopez, which contained "no reports of difficulty walking or other functional limitation due to dizziness, diplopia or other vision impairment." *Id.* (citing R. 393-414).

Furthermore, in reaching her RFC determination, the ALJ—after specifically noting the Plaintiff's hearing testimony that she "cannot see a computer screen"—implicitly rejected that assertion, finding that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with" the record evidence. (R. 17). The ALJ also explicitly rejected Dr. Lopez's December 2016 statement, upon which the Plaintiff now relies, that the Plaintiff was "wheelchair bound" as a result of her double vision. (R. 19, 393).

The Plaintiff fails to demonstrate that the ALJ erred in making the above findings. Indeed, the Plaintiff's memorandum merely reiterates her subjective allegations of visual impairments that prevented her from seeing a computer screen—subjective allegations that, as noted above, the ALJ rejected. Nothing in the Plaintiff's

brief, nor in the Court's independent review of the record, leads to the conclusion that the ALJ's determinations regarding the limiting effects of her diplopia or other visual conditions are unsupported by substantial evidence or are otherwise in error. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."); *Davis v. Astrue*, 346 F. App'x 439, 441 (11th Cir. 2009). To the contrary, the Court is satisfied that the ALJ sufficiently evaluated such complaints with citations to the record. Thus, the Court finds no cause for remand on this claim.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

DONE and ORDERED in Tampa, Florida, this 16th day of August 2019.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record